Filed 7/19/16

CERTIFIED FOR PUBLICATION

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


**CITY OF EUREKA,**

    **Plaintiff and Appellant,**          **A145701**

    **v.**                             **(Humboldt County Super. Ct. No.**

**THE SUPERIOR COURT OF**        **JV140252)**
**HUMBOLDT COUNTY,**

    **Defendant and Respondent;**

**THADEUS GREENSON,**

    **Real Party in Interest and Respondent.**
_____/


    The issue in this case is whether a video of an arrest captured by a patrol car's dashboard camera is a confidential "personnel record" under Penal Code sections 832.7 or 832.8.[1] On the record before us, the answer is no. We conclude the juvenile court properly determined the arrest video is not a personnel record protected by the *Pitchess* statutes. (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).) We therefore affirm the court's order requiring the City of Eureka (City) to release a portion of the video to local reporter and real party in interest, Thadeus Greenson.

---

[1]    Unless noted, all further statutory references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

*Arrest, Charges, and Internal Affairs Investigation*

In December 2012, Eureka Police Sergeant Adam Laird and other Eureka police officers arrested H.M. (the minor). Sergeant Laird chased the minor, who "was pushed to the ground, fell to the ground, or just gave up and laid on the ground." Another police officer arrived "in his patrol vehicle with its in-car video equipment activated[.]" The patrol car's mobile audio video (MAV) recording system produced several videos of the arrest.[2] The prosecution filed a Welfare and Institutions Code section 602 petition against the minor, but later withdrew it.

A citizen lodged a complaint regarding the officers' "handling of the minor" and the Eureka Police Department conducted an internal affairs investigation. The prosecution charged Sergeant Laird with misdemeanor assault by a police officer without lawful necessity (§ 149) and with making a false report (§ 118.1). Both the prosecution and defense hired experts to review the evidence against Sergeant Laird. After reviewing the evidence — including the arrest video — the experts determined Sergeant Laird did not use excessive force during the arrest. The prosecution dismissed the charges against Sergeant Laird in January 2014.

*Greenson's Request for Disclosure of the Arrest Video*

In July 2013 and January 2014, Greenson wrote articles in two local newspapers about the arrest and subsequent litigation. In August 2014, Greenson filed a California Public Records Act (Gov. Code, § 6250, et seq.) request with the City seeking disclosure of the arrest video. The City denied the request, "citing discretionary exemptions for personnel records and investigative files."

In November 2014, Greenson filed a request for disclosure (form JV-570) of the arrest video pursuant to Welfare and Institutions Code section 827, which authorizes public disclosure of confidential juvenile records under limited circumstances. Greenson

---

[2]　On our own motion, we augmented the record with the unedited video described as"EPD-3C12-10697, MAV 2025, Camera 1 from 12/6/12 23:53:35-23:55:40" (video or arrest video).

2

averred the video "formed the basis" for the charges against Sergeant Laird, but the prosecution "later dismissed the charges with little, if any, explanation. [Sergeant] Laird's defense . . . was an allegation that he'd been singled out for arrest by the . . . Police Department for exercising his First Amendment free speech rights and that the [police department] deliberately withheld exculpatory evidence from prosecutors." According to Greenson, "the public has a right to know exactly what happened" during the minor's arrest "to evaluate the performance of both its police officers and prosecutors. The public's only avenue to that knowledge, and the only thing that will allow the public to make that evaluation, is the video [of the] arrest."

The Humboldt County Probation Department (the County) objected, claiming Greenson failed to demonstrate good cause for disclosure under Welfare and Institutions Code section 827. As the County explained, "[p]ublic dissemination of the video is not necessary to facilitate public scrutiny" of Sergeant Laird's conduct because Greenson had "already obtained court records and other public documents describing the events depicted by the video and ha[d] previously published details of the incident . . . . Under these circumstances, release of the video would serve only to prejudice the minor by exposing his image, his actions, and his juvenile record to widespread public scrutiny." The County also noted Greenson had not served the police department with the disclosure request. The City also urged the court to deny Greenson's request. It argued the video was a police officer "personnel record" and "[d]isclosure . . . would require a successful *Pitchess* [m]otion," which Greenson had not filed. The City also claimed disclosing the video could be detrimental to the minor under Welfare and Institutions Code section 827.

At a late January 2015 hearing, the court directed Greenson to serve the police department and the City with the disclosure request and continued the matter to late February 2015. Before the February 2015 hearing, Greenson filed a reply offering additional information about the criminal case against Sergeant Laird and claiming the case "called into question" the conduct of the "entire [police] department." According to Greenson, the public had "a right to evaluate the conduct of its officers and prosecutors" and needed to know why criminal charges were filed against Sergeant Laird when

3

"experts determined [his] use of force was justified[.]" Greenson also argued releasing the arrest video would not harm the minor, because he did not oppose disclosure and because the arrest had been "widely reported on[.]" Finally, Greenson claimed the video was not a personnel record protected by the *Pitchess* statutes.

At a February 2015 hearing, the minor "waive[d] his right to confidentiality" of the arrest video and consented to disclosure. The County and the City, however, continued to oppose the video's release. As relevant here, the City argued the police department had conducted an internal affairs investigation and the video was "part of that [investigation]" and could not be released "without a successful *Pitchess* motion." According to the City, a *Pitchess* motion could not be filed because "[t]here are no cases pending, no charges have been filed. Nothing is pending at this point." The court indicated its inclination to review the video in camera and to determine whether there was a "compelling need . . . for . . . the public to have that . . . information."

Pursuant to the court's order, the County provided the court with "an unedited version" of the arrest captured by the MAV "units from the various patrol units involved." The court reviewed the videos in camera. In a May 2015 written order, the court ordered disclosure of the arrest video. It concluded the video was not a confidential police personnel record protected by the *Pitchess* statutes, explaining the arrest was "both the subject of a delinquency investigation and potentially actions which could result in confidential internal personnel proceedings. [Greenson] is not requesting what might otherwise be the subject of a *Pitchess* type motion such as confidential citizen complaints and the resulting investigation or outcomes of those investigations. He is requesting only that information which would form the basis of the original criminal complaint against [Sergeant Laird] or delinquency proceedings against the minor."

As required by Welfare and Institutions Code section 827, the court considered the public interest in disclosure, including "the interest of transparency of juvenile court proceedings[,]" and the "minor's consent to disclosure[.]" The court ordered the City to release the video pursuant to a protective order removing the minor's name and redacting or blurring his identifying features to conceal his identity. Finally, the court concluded

4

the remainder of the MAV videos were redundant or irrelevant and declined to disclose them; it set a June 2015 hearing to review the redacted video.

The day before the June 2015 hearing, the City filed writ petition seeking to vacate the court's May 2015 ruling. (*City of Eureka v. Superior Court*, A145288). This court denied the City's writ petition. The City appealed from the court's May 2015 order.

DISCUSSION

I.

*Welfare and Institutions Code Section 827*
*and the Pitchess Statutes*

The City contends the court erred by ordering disclosure of the arrest video, which is part of the minor's case file. (Welf. & Inst. Code, § 827, subd. (e); see also Hoffstadt, California Criminal Discovery (5th ed. 2015) § 12.13(a)(vii), pp. 332-333 [describing contents of "juvenile 'case file'"].) In general, juvenile court records are confidential. (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 230 (*Keisha T.*).) But "this policy of confidentiality is not absolute." (*Id.* at p. 231.) Welfare and Institutions Code section 827 "governs the release of such records" (*Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 827 (*Pack*)) and "enumerates a list of persons who may inspect a juvenile case file without a court order; in addition, a juvenile case file may be inspected by '[a]ny other person who may be designated by court order of the judge of the juvenile court upon filing a petition.'" (*People v. Thurston* (2016) 244 Cal.App.4th 644, 670-671, fn. omitted, quoting Welf. & Inst. Code, § 827, subd. (a)(1)(P).) Under appropriate circumstances, a juvenile court may order the release of juvenile court records to the press. (*Keisha T., supra,* 38 Cal.App.4th at p. 236 [newspaper publisher]; *Pack, supra,* 89 Cal.App.4th at p. 828 [newspapers and press representatives].)

"When such a petition is presented, the juvenile court's duty is to 'balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public.' [Citation.] To do so, the court 'must take into account any restrictions on disclosure found in other statutes, the general policies in favor of confidentiality and the nature of any privileges asserted, and compare these

5

factors to the justification offered by the applicant' in order to determine what information, if any, should be released to the petitioner. [Citation.]" (*People v. Superior Court* (2003) 107 Cal.App.4th 488, 492; see also Cal. Rules of Court, rule 5.552(e).) "The juvenile court has both 'the sensitivity and expertise' to make decisions about access to juvenile court records and is in the best position to consider *any other statutes or policies which may militate against access.*" (*Pack, supra,* 89 Cal.App.4th at p. 827, italics added, quoting *In re Maria V.* (1985) 167 Cal.App.3d 1099, 1103.)

The City contends the *Pitchess* statutes militate against Greenson's access to the arrest video. According to the City, the video "is a confidential personnel record" protected from disclosure "pursuant to *Pitchess* law" and Welfare and Institutions Code section 827 cannot be used to "circumvent *Pitchess* procedure." Under *Pitchess*, "a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. "In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' . . . through the enactment of . . . sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045.'" [Citation.] 'Traditionally, *Pitchess* motions seek information about past complaints by third parties of excessive force, violence, dishonesty, or the filing of false police reports contained in the officer's personnel file.' [Citation.]" (*People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 710.)

Section 832.7, subdivision (a) provides that "[p]eace officer . . . personnel records . . . or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." (See *Johnson, supra,* 61 Cal.4th at p. 710.) "As employed in the *Pitchess* statutes, the term 'personnel records' refers to any file maintained under an individual's name by his or her employing agency and containing records related to '[e]mployee advancement, appraisal, or discipline,' '[c]omplaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her

6

duties,' and '[a]ny other information the disclosure of which would constitute an unwarranted invasion of personal privacy.'" (*Pasadena Police Officers Assn. v. Superior Court* (2015) 240 Cal.App.4th 268, 285 (*Pasadena POA*), quoting § 832.8, subds. (d)-(f).)

## II.

### *The Arrest Video Is Not a "Personnel Record" under Sections 832.7 and 832.8*

The court determined the video was not a confidential police personnel record protected by the *Pitchess* statutes. As it explained, Greenson was "not requesting what might otherwise be the subject of a *Pitchess* type motion such as confidential citizen complaints and the resulting investigation or outcomes of those investigations. He is requesting only that information which would form the basis of the original criminal complaint against [Sergeant Laird] or delinquency proceedings against the minor." We review the court's construction of sections 832.7 and 832.8 de novo. (*Pasadena POA, supra,* 240 Cal.App.4th at p. 285.)

We need not decide whether Welfare and Institutions Code section 827 would authorize disclosure of *Pitchess* material in a juvenile case file because we conclude the City has not demonstrated the arrest video is a "personnel record" under sections 832.7 and 832.8. The arrest video does not come within section 832.8, subdivision (d), which defines "personnel records" as those relating a police officer's "advancement, appraisal, or discipline." *Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59 (*LBPOA*) supports our conclusion. There, our high court considered a public records act request for the identities of police officers involved in various shootings. (*Id.* at p. 71.) The California Supreme Court concluded the information was not covered by the *Pitchess* statutes, explaining: "Although the *Pitchess* statutes limit public access to personnel records [citation], including officer names if they are *linked* to information in personnel records [citation], many records routinely maintained by law enforcement agencies are not personnel records. For example, the information contained in the initial incident reports of an on-duty shooting are typically not 'personnel records' as that term

7

is defined in . . . section 832.8. It may be true that such shootings are routinely investigated by the employing agency, resulting eventually in some sort of officer appraisal or discipline. But only the records *generated* in connection with that appraisal or discipline would come within the statutory definition of personnel records [citation.] We do not read the phrase 'records relating to . . . [¶] . . . [¶] . . . [e]mployee . . . appraisal[ ] or discipline' [citation] so broadly as to include every record that might be *considered* for purposes of an officer's appraisal or discipline, for such a broad reading of the statute would sweep virtually all law enforcement records into the protected category of 'personnel records' [citation]." (*Ibid.*)

Here as in *LBPOA*, the City has not demonstrated the arrest video was "*generated* in connection" with Sergeant Laird's appraisal or discipline. The video is simply a visual record of the minor's arrest. (*LBPOA, supra,* 59 Cal.4th at p. 72.) Adopting the City's broad reading of section 832.8, subdivision (d) would improperly "sweep virtually all [MAV recordings] into the protected category of 'personnel records' [citation]." (*LBPOA, supra,* 59 Cal.4th at p. 71.) We conclude the arrest video is akin to "information contained in the initial incident reports" of an arrest, which "are typically not 'personnel records' as that term is defined in . . . section 832.8." (*Ibid.*)

At oral argument, the City claimed dashboard camera videos come within section 832.8, subdivision (d) because the police department might eventually use the videos to evaluate whether to initiate disciplinary proceedings against a peace officer. We are not persuaded. That officers involved in an incident might face an internal affairs investigation or discipline at some unspecified point in the future does not transmute arrest videos into disciplinary documentation or confidential personnel information.[3]

---

[3]    At oral argument, Greenson's counsel argued the focus of the *Pitchess* statutes is protecting a peace officer's reasonable expectation of privacy in his personnel records. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1220 [in camera review balances "the accused's need for disclosure of relevant information with the law enforcement officer's legitimate expectation of privacy in his . . . personnel records"]; § 832.8, subd. (f) [defining "personnel records" as including "[a]ny other information the disclosure of which would constitute an unwarranted invasion of personal privacy"].) According to

The City suggests the video is a "personnel record" under section 832.8, subdivision (e), which encompasses "'complaints, or investigations of complaints, concerning an event or transaction in which he . . . participated, or which he . . . perceived, and pertaining to the manner in which he . . . performed his . . . duties.'" According to the City, the arrest video comes within section 832.8, subdivision (e) because the police department "pulled a recording of the incident" during the internal affairs investigation and the "video served as the backbone of the Internal Affairs investigation and was intimately relied upon by the investigating officers."

We reject this argument because it is unsupported by evidence in the appellate record. We have carefully reviewed the record and have found no evidence the "video served as the backbone of the Internal Affairs investigation and was intimately relied upon by the investigating officers." (See *Pasadena POA, supra,* 240 Cal.App.4th at p. 291 [rejecting a similar "factually unsupported contention"].) Even if we assume for the sake of argument the arrest video was considered or relied upon during the internal affairs investigation, it would not transmute the video into confidential personnel information. The arrest video "was generated independently and in advance of the administrative investigation." (*Id.* at pp. 291, 288 ["'records about an incident'" triggering an internal investigation not protected personnel records under *Pitchess*].)

The City's reliance on *Berkeley Police Assn. v. City of Berkeley* (2008) 167 Cal.App.4th 385 (*Berkeley PA*) does not alter our conclusion. That case considered whether proceedings conducted by a police review commission fell within section 832.5,

Greenson's counsel, Sergeant Laird had no expectation of privacy in the arrest video because it took place on a public street. We agree. "A peace officer ordinarily has no substantial interest in maintaining the confidentiality of his or her identity or the fact of his or her employment as a peace officer." (See *Ibarra v. Superior Court* (2013) 217 Cal.App.4th 695, 705 [peace officer's official photograph not a personnel record under section 832.8]; *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 297 [the public has a "legitimate interest in the identity and activities of peace officers"].) On the record before us, there is no indication Sergeant Laird "worked undercover or anticipate[d] working undercover in the future, [citation] and no reason to believe that the disclosure [of the arrest video] would adversely impact any privacy interest." (*Ibarra v. Superior Court, supra,* 217 Cal.App.4th at p. 705.)

which requires law enforcement departments to investigate complaints against their personnel. A division of this court determined the police review commission proceedings "fit the description of [a] section 832.5" proceeding, and the commission's practice of holding public hearings on citizen complaints against police officers violated section 832.7, subdivision (a) by disclosing confidential police officer personnel information. (*Berkeley PA,* at pp. 402, 404-405.) *Berkeley PA* is inapposite. Greenson does not seek disclosure of the investigative materials, reports, or findings made in connection with the police department's internal affairs investigation. (See, e.g., *Pasadena POA, supra,* 240 Cal.App.4th at p. 290.) He seeks disclosure of the arrest video, which preceded the citizen complaint and internal affairs investigation. *Berkeley PA* is inapposite.

We express no opinion on whether the arrest video is a public record under the California Public Records Act, nor on the propriety of the court's ruling under Welfare and Institutions Code section 827 because the City did not raise these arguments on appeal. "Issues do not have a life of their own: if they are not raised . . . , we consider [them] waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

DISPOSITION

The court's May 20, 2015 order is affirmed. Thadeus Greenson is entitled to recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____

Jones, P.J.


We concur:


_____

Simons, J.


_____

Needham, J.


A145701


11

Superior Court of the County of Humboldt, No. JV140252, Christopher G. Wilson, Judge.

Cyndy Day-Wilson, City Attorney, for Plaintiff and Appellant.

Mary Blair Angus, County Counsel, for Defendant and Respondent.

Paul Nicholas Boylan, for Real Party in Interest and Respondent.

A145701